**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

JOHN W. JEMISON,                          §
                                          §
                    Plaintiff,            §
                                          §
VS.                                       §        CIVIL ACTION NO. H-13-2475
                                          §
CITIMORTGAGE, INC., *et al*.,             §
                                          §
                    Defendants.           §

**MEMORANDUM AND OPINION**

The plaintiff, John Jemison, defaulted on his mortgage loan and sued to stop the lender from foreclosing.  On July 19, 2013, Jemison, representing himself, filed a state-court petition against CitiMortgage Inc.  (Docket Entry No. 1, Ex. D).  CitiMortgage removed the case based on diversity jurisdiction.  (Docket Entry No. 1).  Jemison retained counsel and filed an amended complaint, naming as defendants CitiMortgage, Town and Country Credit Corp., Ameriquest Mortgage Co., CNBA Other Hold Portfolio, Citibank, N.A., and unknown Doe defendants.  (*See* Docket Entry Nos. 34, 39).  The defendants who were served filed a motion to dismiss, or in the alternative, a motion for judgment on the pleadings.  (Docket Entry No. 37).  Jemison responded, (Docket Entry No. 42), and the defendants replied, (Docket Entry No. 43).[1]  After reviewing the pleadings; the motion, response, reply, and related submissions; and the applicable law, the court grants the defendants' motion to dismiss and enters final judgment by separate order.  The reasons are explained below.

---

[1] Jemison subsequently dismissed, without prejudice, Ameriquest Mortgage Company and Town and Country Credit Corporation.  (Docket Entry No. 53).

## I.       Background

Jemison obtained title to the property by general warranty deed in September 1994.  (First Amended Complaint ("FAC"), Docket Entry No. 39, Ex. A).  The relevant mortgage is a $526,200 mortgage loan that Jemison obtained from Town & Country Credit Corporation on May 27, 2004.  (*Id.*, Ex. B).  The same day, Jemison executed a $526,200 promissory note (the "Note"), secured by a deed of trust (the "Deed of Trust"), naming Town and Country as the lender and beneficiary.  (*Id.*, Ex. D).  In June 2004, Town & Country assigned the Note and Deed of Trust to Ameriquest Mortgage Company.  (*Id.*, Ex. I).  In October 2004, Ameriquest Mortgage notified Jemison that CitiMortgage would be the mortgage servicer.  (*Id.*, Ex. O at 2).  In May 2006, Ameriquest assigned the Note and Deed of Trust to CitiMortgage.  (*Id.*, Ex. K).

Jemison failed to make required Note payments.  (FAC ¶ 25).  Based on his default, CitiMortgage accelerated the loan, informing Jemison by a letter sent in November 2010.  The letter told Jemison that the outstanding balance on the Note was $543,225.16 and that CitiMortgage could foreclose.  (*Id.*, Ex. O).

Jemison filed suit in state court seeking to avoid foreclosure.  (Docket Entry No. 1, Ex. D).  After CitiMortgage removed, this court granted Jemison multiple opportunities and extensions to amend his pleadings.  This court also ordered CitiMortgage to produce documents relating to the Note and Deed of Trust, including the payment and account history.  (*See, e.g.*, Docket Entry Nos. 20, 22).  Jemison obtained counsel, and the court granted an additional extension of time to amend his pleadings.  (Docket Entry No. 33).

On January 10, 2014, Jemison filed his first amended complaint. (Docket Entry No. 34). The amended complaint asserted the following causes of action and bases for relief:

1.  lack of statutory standing to foreclose/wrongful attempted foreclosure;
2.  suit to quiet title;
3.  violation of the Texas Debt Collection Act ("TDCA"), ;
4.  breach of contract;
5.  violation of the Truth in Lending Act ("TILA");
6.  tortious interference with contract;
7.  article XVI, § 50(a)(6) of the Texas Constitution; and
8.  declaratory relief.

Jemison sought damages, declaratory relief, and attorneys' fees.

Jemison does not dispute that he defaulted on the Note. The gravamen of Jemison's suit is that alleged defects in the assignment of the Note or Deed of Trust stripped the defendants of their authority to foreclose on his property, breached the loan agreement, and violated Texas law.

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for judgment on the pleadings under Rule 12(c). (Docket Entry No. 37). After the defendants moved to dismiss, Jemison sought leave multiple times to correct or amend the first amended complaint. (Docket Entries No. 39, 47). The corrections and amendments did not change the substance of Jemison's claims. The amended pleadings supplemented the complaint with documents but did not make the defendants' motion to dismiss moot or in need of revision. These motions are granted.[1] Jemison moved for leave to file yet another amended complaint, (Docket Entry No. 53), which does add a new basis for his claims. This motion is denied because leave to amend would be futile.[2]

---

[1]  The defendants' motions to strike, (Docket Entry Nos. 40, 48), are moot.

[2]  Jemison's latest filing on June 9, 2014 appears to add a new allegation that the assignments were improper because they violated the terms of the applicable Pooling and Servicing Agreement ("PSA"). (Docket Entry No. 53). Jemison alleges that these alleged PSA violations voided the assignments, so that the defendants have no authority to foreclose. The Fifth Circuit and district courts have consistently held that a borrower such as Jemison does not have standing under

The arguments and responses are analyzed below.

## II.     The Legal Standard for Motions to Dismiss and For Leave to Amend

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b) (6).  In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 677.

"[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint . . . courts may also consider matters of which they may take judicial notice."  *Lovelace*

---

Texas law to challenge a violation of the PSA unless he is a party to the agreement or an intended third-party beneficiary. *E.g. Reinagel v. Deutsche Bank Nat'l. Trust Co.*, 735 F.3d 220, 228 (5th Cir. 2013); *Svoboda v. Bank of Am., N.A.*, 13-50818, 2014 WL 2547762, at 2–3 (5th Cir. June 6, 2014) (per curiam) (unpublished); *see also Lopez v. Sovereign Bank, N.A.*, No. 13-cv-1429, 2014 WL 1315834, at *7 (S.D. Tex. Mar. 31, 2014); *Applin v. Deutsche Bank Nat. Trust*, No. 13-cv-2831, 2014 WL 1024006, at *4–5 (S.D. Tex. Mar. 17, 2014); *Davis v. Countrywide Home Loans, Inc.*, —F. Supp. 2d —, No. 13-cv-623, 2014 WL 838146, at *4 (S.D. Tex. Mar. 3, 2014); *Davis v. Countrywide Home Loans, Inc.*, — F. Supp. 2d —, No. 13-cv-623, 2014 WL 838146, at *4 (S.D. Tex. Mar. 3, 2014); *Davis v. Silver State Fin. Servs.*, No. 13-cv-1432, 2014 WL 713235, at *4 (S.D. Tex. Feb. 20, 2014); *Van Duzer v. U.S. Bank Nat. Ass'n*, No. 13-cv-1398, 2014 WL 357878, at *8 (S.D. Tex. Jan. 31, 2014).  Jemison is neither a party to the PSA for the trust into which he alleged his Note was transferred nor an intended third-party beneficiary.  The assignments are not void because of alleged violations of the PSA.

*v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996).  A court may, however, "consider documents integral to and explicitly relied on in the complaint, that the defendant appends to his motion to dismiss, as well as the full text of documents that are partially quoted or referred to in the complaint."  *In re Sec. Litig. BMC Software, Inc.*, 183 F. Supp. 2d 860, 882 (S.D. Tex. 2001). The court may consider such extrinsic materials as matters of public record without converting the motion into one seeking summary judgment.

When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff a chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice, unless it is clear that to do so would be futile.  *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.").  However, a plaintiff should be denied leave to amend a complaint if the court determines that "the proposed change clearly is frivolous or advances a claim or defense that is legally insufficient on its face." 6 CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1487 (2d ed. 1990); *see also Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) ("'[A] district court acts within its discretion when dismissing a motion to amend that is frivolous or futile.'" (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999))). *Manor Assocs. v. City of Houston*, 816 F. Supp. 2d 394, 404 n.5 (S.D. Tex. 2011).

Under Federal Rule of Civil Procedure 15(a), a district court "should freely give leave [to amend] when justice so requires."  FED. R. CIV. P. 15(a)(2).  "[T]he language of this rule evinces a

bias in favor of granting leave to amend." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotation marks omitted).  Although leave to amend should not be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Id.* (internal quotation marks omitted).  Under Rule 15(a), "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010).  A proposed amendment is futile if "the amended complaint would fail to state a claim upon which relief can be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "[T]he same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to determining futility.  *Id.* (internal quotation marks omitted).

## III.    Discussion

### A.    CitiMortgage's Standing to Foreclose

Jemison contends that CitiMortgage and the defendants lack standing to foreclose on his property because of defects in the assignments of the Note or the Deed of Trust from Town and Country to Ameriquest Mortgage and then from Ameriquest to CitiMortgage.  Jemison argues that the defects rendered the assignments void.  CitiMortgage and the defendants deny that there were defects; argue that the assignments are at most voidable, not void; and argue that Jemison lacks standing under Texas law to challenge the assignments because he was not a party to them.  The defendants are correct.

In *Reinagel v. Deustche Bank National Trust Company*, 735 F.3d 220, 225 (5th Cir. 2013),

the Fifth Circuit recently identified the situations in which a mortgagor has standing to challenge assignments of a promissory note or deed of trust. The court stated, "the law is settled in Texas that an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment voidable at the election of the assignor. Texas courts follow the majority rule that the obligor may defend on any ground which renders the assignment void." *Id.* (internal quotations omitted; emphasis omitted).

Jemison relies on *Miller v. Homecomings Financial LLC*, 881 F. Supp. 2d 825 (S.D. Tex. 2012), to support his contention that the assignments are void. In *Miller*, the court permitted the plaintiffs to challenge assignments as void because of gaps between the original lender and the party claiming the right to foreclose. *See id.* at 830–31 ("When a party seeking to foreclose fails to show an unbroken chain of title, then the homeowner may be entitled to an injunction against the threatened foreclosure.").

*Miller* is not on point. In the present case, the documents properly considered on the motion to dismiss show that the chain of title between the original lender (Town and Country) and the party seeking to foreclose (CitiMortgage) is unbroken and without gaps. Copies of the Note and the Deed of Trust and the documents showing their assignment, which Jemison attached to his amended complaint, demonstrate this as a matter of law. These documents show that Jemison executed the Note and Deed of Trust on May 27, 2004, naming Town and Country as the holder and beneficiary of the Note and Deed of Trust. (Docket Entry No. 39, Ex. D). Town and Country assigned the Note and Deed of Trust to Ameriquest on June 7, 2004. (*Id.*, Ex. I). Ameriquest assigned its interests to CitiMortgage on May 22, 2006. (*Id.*, Ex. K). The original Note and Deed of Trust were signed by Jemison and by representatives of Town and Country. The subsequent assignments to Ameriquest

and CitiMortgage were signed and recorded.  There are no gaps in the chain of title, distinguishing the present case from *Miller*.

Jemison also alleged that the signature on the assignment from Ameriquest to CitiMortgage was a forgery on the theory that the person signing as "Attorney-in-fact" for Ameriquest, Deanne Wileman, was not the Vice-President of Orion Financial Group, as the assignment stated, but rather director of Human Resources at Orion.  (FAC ¶ 20).  Despite repeated amendments, Jemison has not alleged facts, that if true, would give rise to an inference that the assignment was void under Texas law.[2]  Under *Reinagel*, even if Jemison had pleaded that Wileman lacked authority, the assignment at most would be voidable at the election of CitiMortgage, the allegedly defrauded principal, and Jemison would lack standing to challenge the assignment.  *See Reinagel*, 735 F.3d at 225 (noting that under Texas law, "a contract executed on behalf of a corporation by a person fraudulently purporting to be a corporate officer is, like any other unauthorized contract, not void, but merely voidable at the election of the defrauded principal"); *see also Davis v. Countrywide Home Loans, Inc.*, — F. Supp. 2d —, No. 13-cv-623, 2014 WL 838146, at *4 (S.D. Tex. Mar. 3, 2014) ("It is settled that . . . a deed [executed by a person fraudulently misrepresenting her agency] is valid and represents prima facie evidence of title until there has been a successful suit to set it aside . . . [which] can only be maintained by the defrauded [principal]." (alterations in original) (quoting

---

[2]  To the extent that Jemison is arguing that the assignments were forged, his complaint has not met Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements.  Rule 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake."  Rule 9(b) applies to all averments of fraud, including those in which fraud is not an element of the claim.  *Lone Star Ladies Inv. Club v. Schlotzky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).  Rule 9(b) applies to Jemison's claims of forgery.  Jemison has not met Rule 9(b)'s heightened pleading standard because his allegations of fraud are too general and do not identify the "who, what, when, where, and how" of the fraud."  *See Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (citing FED. R. CIV. P. 9(B)).

*Nobles v. Marcus*, 533 S.W.2d 923, 926 (Tex. 1976))).

Jemison appears to argue in the alternative that CitiMortgage may not foreclose because it is not the Note "holder," reasoning that the assignments were void because the Note lacks the necessary endorsements. Jemison appears to rely on *Miller* for this proposition. But *Miller* explicitly rejected this argument. *Miller* stated that while a chain of endorsements on the promissory note may be sufficient to establish a right to foreclose, it is not necessary. *Miller*, 881 F. Supp. 2d at 830 ("[H]olding the original note is one way to establish the right to foreclose, but not the only way."). For example, "[t]he Texas Property Code provides that either a mortgagee or mortgage servicer may administer a deed of trust foreclosure without production of the original note." *Crear v. JP Morgan Chase Bank N.A.*, No. 10-10875, 2011 WL 1129574, at *1 n.1 (5th Cir. Mar. 28, 2011) (per curiam) (unpublished) (citing TEX. PROP. CODE §§ 51.002, 51.0025). Assuming that the necessary endorsements were absent, the defendants have nonetheless established the right to foreclose by proving an unbroken chain of assignments of the Deed of Trust.

CitiMortgage, as the beneficiary of the validly assigned Deed of Trust, has the legal authority to foreclose.

### B. The Claim that the Foreclosure Was Wrongful

The amended complaint lists "wrongful attempted foreclosure" as part of the cause of action that the defendants lack standing to foreclose. It is difficult to determine what Jemison is alleging because his response to the defendants' motion to dismiss does not address a claim for wrongful foreclosure. To the extent that Jemison is arguing that CitiMortgage and the defendants do not have authority to foreclose, this court has concluded that the assignments of the Deed of Trust to

CitiMortgage gave it the power to foreclose.  To the extent that Jemison is alleging and arguing common-law wrongful foreclosure, that claim fails because no foreclosure sale has occurred.

"Under Texas common law, a borrower may recover for wrongful foreclosure when inconsistencies or irregularities in the foreclosure process cause the borrower to suffer a loss." *Buchanan v. U.S. Bank N.A.*, No. 13-cv-3525, 2013 WL 6890003, at *2 (S.D. Tex. Dec.31, 2013) (citing *Wieler v. United Sav. Ass'n of Tex.*, 887 S.W.2d 155, 158 (Tex. App.—Texarkana 1994, writ denied)).  "A borrower may recover damages for wrongful foreclosure only if the lender: (1) fails to comply with statutory or contractual terms in the foreclosure; or (2) complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure proceedings." *Id.* (citing *Houston Omni USA Co. v. Southtrust Bank Corp.*, No. 01-07-433-CV, 2009 WL 1161860, at *6 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *First State Bank v. Keilman*, 851 S.W.2d 914, 921–22 (Tex. App.—Austin 1993, no writ.)).  "'Under Texas law, even if a mortgage holder wrongfully attempts foreclosure, there is no claim for wrongful foreclosure if the mortgagor does not lose possession of the home.'" *Id.* (quoting *Smith v. J.P. Morgan Chase Bank N.A.*, No. 10-cv-3730, 2010 WL 4622209, at *2 (S.D. Tex. Nov. 4, 2010)).

Jemison has neither pleaded nor argued in his response to the motion to dismiss that the defendants foreclosed on his property or that he lost possession of his home.  Jemison has failed to state a claim for wrongful foreclosure.  The wrongful foreclosure claim is dismissed with prejudice because further amendment would be futile.

    **C.**    **The Quiet-Title Claim**

Jemison claims that he has superior title to the property despite the fact that he has defaulted on the Note and failed to make payments to cure the default and bring the Note current.  His suit to quiet title fails as a matter of law.

Under Texas law, "[a] suit to clear or quiet title—also known as suit to remove cloud from title—relies on the invalidity of the defendant's claim to the property." *Essex Crane Rental Corp. v. Carter*, 371 S.W.3d 366, 388 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).  This equitable action "exists to 'enable the holder of the feeblest equity to remove from his way to legal title any unlawful hindrance having the appearance of better right.'"  *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Thomson v. Locke*, 1 S.W. 112, 115 (1886)).  The elements of a quiet-title claim are:  "(1) an interest in a specific property; (2) title to the property is affected by a claim by the defendant; and (3) the claim, although facially valid, is invalid or unenforceable."  *Cruz v. CitiMortgage, Inc.*, No. 11-cv-2871, 2012 WL 1836095, at *4 (N.D. Tex. May 21, 2012) (citing *Sadler v. Duvall*, 815 S.W.2d 285, 293 n.2 (Tex. App.—Texarkana 1991, writ denied)).  "To quiet title in his favor, the plaintiff 'must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see he or she has a right of ownership that will warrant judicial interference.'"  *Wells v. BAC Home Loans Servicing, L.P.*, No. 10-cv-350, 2011 WL 2163987, at *4 (W.D. Tex. April 26, 2011) (quoting *Wright v. Matthews*, 26 S.W.3d 575, 578 (Tex. App.—Beaumont 2000, pet. denied)).

"Texas courts have made clear that 'a necessary prerequisite to the . . . recovery of title . . . is tender of whatever amount is owed on the note.'"  *Cook–Bell v. Mortg. Elec. Registration Sys., Inc.*, 868 F. Supp. 2d 585, 591 (N.D. Tex. 2012) (omission in the original) (quoting *Fillion v. David Silvers Co.*, 709 S.W.2d 240, 246 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *see also*

11

*James v. Wells Fargo Bank, N.A.*, No. 14-cv-0449, 2014 WL 2123060, at \*8 (S.D. Tex. May 21, 2014).  The plaintiff "must allege right, title, or ownership in himself or herself with sufficient certainty to enable the court to see [that] he or she has a right of ownership that will warrant judicial interference." *Wright*, 26 S.W.3d at 578.  Jemison's amended complaint did not allege facts that would show that his claim to the property is superior to the defendants' claim.  Jemison does not dispute that he is in default on the mortgage and that the outstanding balance on the loan is over $500,000.  Jemison has not tendered the amount due on the loan as necessary to assert a claim for "recovery of title." *Cook-Bell*, 868 F. Supp. 2d at 591.  As a matter of law, Jemison "does not assert a superior title, and alleges no facts to support a superior claim." *Bell v. Bank of Am. Home Loan Servicing LP*, 11-cv-02085, 2012 WL 568755, \*7 (S.D. Tex. Feb. 21, 2012).  As noted above, the copies of the assignments of the Note and Deed of Trust in the record establish an unbroken chain of title to the property from Town and Country, the original lender, to CitiMortgage, the party attempting to foreclose, and demonstrate the superiority of CitiMortgage's title to the property.

Jemison has failed to state a claim to quiet title.  This claim is dismissed, with prejudice, because future amendment would be futile.

### D.    The Claim for Slander of Title

"Slander of title" under Texas law "is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages." *Elijah Ragira/VIP Lodging Grp., Inc. v. VIP Lodging Grp., Inc.*, 301 S.W.3d 747, 758 (Tex. App.—El Paso 2009, no pet.).  The plaintiff must prove "the uttering and publishing of disparaging words that were false and malicious, that special damages were sustained, and that the injured party possessed an interest in

the property disparaged." *Id.* at 759.  The plaintiff must then "demonstrate the loss of a specific sale." *Id.*

Jemison has not alleged facts that, if proved, would support an inference that CitiMortgage or the defendants made false or malicious statements about their authority to foreclose.  The documents attached to the pleadings establish that, as a matter of law, CitiMortgage's claim to the property was "made under color of title or upon reasonable belief" that it has superior title to the property.  *See Storm Assocs., Inc. v. Texaco, Inc.*, 645 S.W.2d 579, 588 (Tex. App.—San Antonio 1982) ("A claim of title does not constitute malice where the claim is made under color of title or upon reasonable belief that parties have title to the property acquired."), *aff'd sub nom. Friedman v. Texaco, Inc.*, 691 S.W.2d 586 (Tex. 1985).

Moreover, Jemison has not alleged that he lost the opportunity to make a specific sale of his property because of the defendants' statements that they had a superior claim.  Jemison's pleading makes vague allegations that the defendants' "false and disparaging documents" caused him to "los[e] real opportunities to sell his property from [*sic*] buyers who have made offers that could have been accepted but for the slander of [his] title."  (Docket Entry No. 39 at ¶ 74).  Despite repeated pleading amendments, these allegations do not assert a plausible claim for slander of title.

The slander of title claim is dismissed, with prejudice, because further amendment would be futile.

### E.    The Claim under the Texas Debt Collection Act

Jemison alleged that CitiMortgage violated the TDCA by threatening "to take action to foreclose on the property without properly considering Plaintiff under the [Home Affordable

Modification Program ("HAMP")] or another alternative action to cure." (FAC ¶ 87). It is unclear what TDCA provisions Jemison claims the defendants violated. The complaint refers to §§ 392.301(a)(8), (14), and (19) of the Texas Finance Code. There are no subsections (a)(14) or (a)(19) under § 392.301. Jemison appears to be referring to §§ 392.304(a)(14), (19)—subsections addressing fraudulent, deceptive, or misleading representations.

The complaint does not allege a colorable claim under § 392.301(a)(8). That subsection states that a debt collector "may not use threats, coercion, or attempts to coerce that . . . threaten[] to take an action prohibited by law." Any statements that CitiMortgage communicated to Jemison about its intent to foreclose were not "prohibited by law." The TDCA does not prevent a debt collector like CitiMortgage from conducting a nonjudicial foreclosure in accordance with the Deed of Trust. *Carrillo v. Bank of Am., N.A.*, No. 12-cv-3096, 2013 WL 1558320, at *7 (S.D. Tex. Apr. 11, 2013). The TDCA explicitly states that it "does not prevent a debt collector from . . . exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." TEX. FIN. CODE. § 392.301(b)(3). In Texas, nonjudicial foreclosure proceedings are authorized under § 51.002 of the Texas Property Code.

To the extent that Jemison asserted claims for violations of §§ 392.304(a)(14) and (19), those claims also fail as a matter of law. Section 392.304(a)(14) prohibits a debt collector from "representing falsely the status or nature of the services rendered by the debt collector." *Id.* § 392.304(a)(14). Construing the complaint generously, Jemison alleged that CitiMortgage violated HAMP and the TDCA by not considering him for a loan modification or by falsely telling him that he could qualify for a modification. The allegations are conclusory and lacking in any specific facts. Jemison states in one sentence that CitiMortgage "passed off Plaintiff to numerous persons who

14

never seemed to be able to help him, and letters from [CitiMortgage] indicated missing information was needed even though Plaintiff supplied all such information the first time it was requested." (FAC ¶ 87). Jemison does not name or describe the titles or roles of the people he talked to, when he talked to them, what information he provided and to whom he provided it, or what information he was told was still missing. These allegations are insufficient to plead a plausible claim. *See, e.g.*, *Franklin v. BAC Home Loans Servicing, L.P.*, No. 10-cv-1174, 2011 WL 248445 at *3 (N.D. Tex. Jan.26, 2011) ("Merely stating Defendant violated the [TDCPA], without more factual allegations, is a legal conclusion couched as a factual assertion, which does not survive a motion to dismiss under the federal rules and applicable law.").

Jemison argues that his TDCA claims are similar to the TDCA claim the Fifth Circuit upheld in *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 723–24 (5th Cir. 2013). In *Miller*, the plaintiffs alleged that the bank told them not to make mortgage payments and to submit a loan modification application by June 17, 2010. *Id.* at 724. The plaintiffs alleged that the bank stated that the foreclosure sale that was to occur on June 1, 2010 had been postponed . *Id.* Despite these statements, the bank foreclosed on June 1, 2010. *Id.* The Fifth Circuit held that the plaintiffs had pleaded a plausible claim under § 392.304(a)(14) because the bank had at least "promised to *consider* the [modification] application before foreclosing," but did not do so. *Id.*

By contrast, Jemison did not allege that the defendants told him that no foreclosure would occur, at least not as scheduled. Jemison did not allege that the defendants told him not to make any payments or to cure the default, which he had been instructed in writing to do in order to avoid foreclosure. (*See* FAC, Ex. O). Jemison has failed to allege factual information about a purported loan modification, although he would have known such information when he filed the state-court

15

petition in July 2013.  *Miller* does not support Jemison's argument that he has stated a claim under the TDCA.  This claim is dismissed, with prejudice, because repeated amendments have not cured the deficient pleading and further amendment would be futile.

**F.     The Claim for Breach of Contract**

Under Texas law, the elements of a breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)).  The plaintiff must identify both the contract and the provisions the defendant allegedly violated.  *See Blakeley v. Boltinghouse*, No. 03-cv-4901, 2005 WL 1185944, at *5 (S.D. Tex. May 4, 2005).

In his response to the motion to dismiss, Jemison argued that the defendants violated the loan agreement by (1) engaging in foreclosure activity when it was not a "lender," as defined in the security agreement, (2) splitting the Note and the Deed of Trust, (3) filing fraudulent documents in the real property records, and (4) violating the TDCA.  (Docket Entry No. 42 at 20–21).  These claims lack merit as a matter of law.

It is undisputed that Jemison defaulted on the loan and did not make payments to bring the loan current.  He has not performed or tendered performance of his contract obligations and therefore cannot establish an element of the cause of action.  *See Mullins*, 564 F.3d at 418.

Citing *Mathis v. DCR Mortgage III Sub, I, LLC*, 952 F. Supp. 2d 828 (W.D. Tex. 2013), Jemison argues that he can maintain his breach of contract claims.  In *Mathis*, the court held that a

homeowner's default did not excuse the mortgage servicer from providing proper notice of acceleration of the promissory note.  *Id.* at 831.  *Mathis* held that the borrower's loan default does not excuse the lender from providing proper notice of acceleration, because "[t]o hold the very act which triggers the contractual obligation amounts to a breach excusing performance of said obligation would render the notice provision a dead letter."  *Id.*  *Mathis* did not undermine the general rule that a party must perform or tender performance under the contract before asserting a claim for breach.  Because Jemison did not make the contractually required payments, he did not perform and his breach of contract claim fails as a matter of law.

Jemison's claims fail on other grounds as well.  His claim that CitiMortgage is not permitted to foreclose because it is not a "lender" is contradicted by the loan documents.  The security agreement defines "lender" to include "any holder of the Note who is entitled to receive payments under the Note.  Lender is the beneficiary under this Security Agreement."  (FAC, Ex. B at 2).  The documents in the record establish that CitiMortgage is the beneficiary of the Security Agreement and the "Lender" under the Agreement.

As to the claim that the defendants breached the agreement by splitting the Note and the Deed of Trust, the language Jemison points to states that the Note and Deed of Trust *can* be sold together, not that they *must* be sold together.  (*Id.*, Ex. B at 11 ("The Note . . . (together with this Security Instrument) can be sold one or more times without prior notice to the Borrower.")).  And the documents do not support an inference that the Note and the Deed of Trust were ever split.  (*See* FAC, Exs. I, K).  Even assuming that the Note and Deed of Trust were split, Jemison has not alleged any damages that the split caused.  *See Mullins*, 564 F.3d at 418.

Jemison's claim that the defendants filed fraudulent documents in the property records fails

17

because he has not met the requirements for pleading fraud in that he has not made specific factual allegations and has not identified which part of the mortgage contract was violated.  *See Blakeley*, 2005 WL 1185944, *5.  Jemison's final allegation of breach is the defendants' alleged violation of the TDCA.  As explained above, the record shows that, as a matter of law, this claim cannot proceed. *See supra* at III.E.

Despite repeated amendments, Jemison has failed to state a claim for breach of contract. Further amendments would be futile.  The breach of contract claim is dismissed, with prejudice.

### G.      The Truth-in-Lending Act Claim

Jemison alleged a violation of the Truth in Lending Act ("TILA") for the defendants' purported failure to notify him of the assignments of the Note and Deed of Trust.  The TILA states that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer."  15 U.S.C. § 1641(g)(1).  The notice must include the identity, address, and telephone number of the new creditor; the date of the transfer; information on how to reach an agent or party with authority to act on behalf of the new creditor; the location of the place where the transfer of ownership of the debt is recorded; and any other relevant information regarding the new creditor. *Id.* at §§ 1641(g)(1)(A)–(E).

Jemison's claims fail as a matter of law because the section of the TILA that his cause of action arises under, § 1641(g)(1), was not in effect when the Note and Deed of Trust were assigned. Section 1641(g) was enacted on May 20, 2009 as part of the "Act to Prevent Mortgage Foreclosures and Enhance Mortgage Credit Availability of 2009," Pub. L. 111–22, § 404(a), 123 Stat. at 1658. Section1641(g) applies to a Note or Deed of Trust assigned on or after the passage of the Act. *Jara*

*v. Aurora Loan Servs.*, 852 F. Supp. 2d 1204, 1208 n.6 (N.D. Cal. 2012).  The loan documents attached to Jemison's amended complaint show that the last assignment of the Note and Deed of Trust, from Ameriquest to CitiMortgage, occurred on May 22, 2006.  This was nearly three years before § 1641(g) became effective.

Jemison has failed to state a claim under the Truth in Lending Act.  Because further amendment would be futile, this claim is dismissed, with prejudice.

**H.      The Claim of Tortious Interference with Contract**

A plaintiff asserting a cause of action for tortious interference with contract must show: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred."  *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 864 (5th Cir. 2004).  Jemison did not address the arguments the defendants raised in their motion to dismiss about the pleading deficiencies for this claim.  The amended complaint did not allege facts that, if proved, would show that the defendants willfully and intentionally interfered with the mortgage contract.  CitiMortgage is contractually authorized to foreclose under the Deed of Trust.

Jemison has failed to state a claim for tortious interference with contract.  Further amendment would be futile.  This claim is dismissed, with prejudice.

**I.      The Claim of Violations of the Texas Constitution**

The amended complaint alleged that the lien is void because it was created in violation of Article XVI, § 50(a)(6) of the Texas Constitution.  Jemison alleged that the principal amount of the loan exceeded 80% of the homestead's fair market value, in violation of § 50(a)(6)(B); that he did not receive a copy of the final loan documents at closing, in violation of § 50(a)(6)(Q)(V); and that

there was no written acknowledgment of the homestead's fair market value, in violation of §
50(a)(6)(Q)(ix).  (FAC ¶¶ 32–34).  All these claims are barred by the four-year statute of limitations
under § 16.051 of the Texas Civil Practice and Remedies Code.

In *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 674 (5th Cir. 2013), the Fifth
Circuit recently held that this statute of limitations applies to claims of "constitutional infirmities
under Section 50(a)(6)."  The claims in *Priester* were brought under § 50(a)(6)(M)(I) and §
50(a)(6)(N), but courts since *Priester* have held that "*Priester*'s holding applies to § 50(a)(6) in its
entirety."  *Prutzman v. Wells Fargo Bank, N.A.*, No. 12-cv-3565, 2013 WL 4063309, at *3 (S.D.
Tex. Aug.12, 2013); *see also Moran v. Ocwen Loan Servicing, L.L.C.*, No. 13-20242, 2014 WL
1193510, at *1–3 (5th Cir. Mar. 24, 2014); *Wiltse v. Carrington Mortg. Servs., L.L.C.*, 540 F. App'x
342, 342–43 (5th Cir. Sept. 20, 2013); *Ausmus v. Deutsche Bank Trust Co. Nat. Ass'n*, No. 13-cv-
148, 2013 WL 3938515, at *2 n.3 (S.D. Tex. July 29, 2013).  *Priester* applies to Jemison's claims.

*Priester* held that the limitations period begins to run on the date of the injury, which for §
50(a)(6) violations is the date the loan closed.  708 F.3d at 675–76.  The loan at issue closed on May
27, 2004.  (FAC, Ex. B).  Jemison did not file this lawsuit until July 19, 2013, more than eight years
later.  (Docket Entry No. 1, Ex. D).  Limitations bars his claims under the Texas Constitution.

**J.      The Claim for Declaratory Relief**

The amended complaint also seeks a declaratory judgment that Jemison has superior title to
and is entitled to exclusive possession of the property.  These claims depend on claims that have
been dismissed.  The declaratory relief claims must be dismissed as well.  *Davis*, — F. Supp. 2d —,
2014 WL 838146, at *6 (citing *Val–Com Acquisitions Trust v. CitiMortgage, Inc.*, 421 F. App'x
398, 400–01 (5th Cir. 2011) (per curiam) (explaining that "[o]nce the district court had dismissed

the underlying [substantive] claims, there were no claims for which [it] could grant declaratory relief") (alterations in the original).

## IV.   Conclusion

The defendants' motion to dismiss, (Docket Entry No. 37), is granted.  Jemison's claims are dismissed, with prejudice.  Final judgment is separately entered.

SIGNED on June 17, 2014, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

21